## A06A1477. PARKS v. THE STATE.
(637 SE2d 46)

SMITH, Presiding Judge.

Jimmy Veondi Parks was indicted for murder, felony murder, possession of a firearm during the commission of a crime, and possession of a firearm by a first offender probationer. On the charges of murder and felony murder, a jury found Parks guilty on each count of the lesser included offense of voluntary manslaughter, and those were merged for sentencing. The jury also found him guilty of possession of a firearm during the commission of a crime.[1] Parks's amended motion for new trial was denied, and he appeals, asserting six enumerations of error. Finding no reversible error, we affirm.

1. Parks asserts the general grounds, contending insufficient evidence supported the voluntary manslaughter verdict because he acted in self-defense. Construed to support the jury's verdict, the evidence shows that Parks and the victim had known each other for a long time. On the evening in question, Parks and the victim "were having a heated discussion." Parks left but returned shortly afterward and wanted the victim to go somewhere. The victim refused, and they again began to argue and "to shove each other." The victim suggested that they step outside. Parks walked out of the door, turned, and shot the victim as he stood in the doorway.

Parks testified at trial that he shot the victim in self-defense. He stated that he and the victim were quarreling because he refused to purchase cocaine for the victim; that the victim pushed and shoved him; that he attempted to walk away but the victim threatened him and followed him out the door; that the victim hit him repeatedly on the head and then reached for a gun; and that only then, did he fire his pistol without aiming, "attempting to get him off me."

But the State presented evidence contradicting Parks's claim of self-defense. Two of the three eyewitnesses denied that the victim had a weapon with him, the third testified that she never saw the victim with a weapon, and the police did not find a weapon at the scene. One witness saw the victim standing with his arms open and heard him

---

[1] Parks pled guilty to possession of a firearm by a first offender probationer.

exclaim, " 'What, you gonna shoot me[?]' " The victim's brother testified that the victim was standing "straight up … with his hands out" and said, " 'What, you gonna shoot me, you gonna shoot your boy[?]' "

After the shooting, Parks fled and was located five days later 400 miles away at a cabin in an Alabama state park. When the police confronted him, he gave a false name. Parks disposed of the firearm used in the shooting and stated at trial that he did not know what he had done with it. Finally, in several statements to police, Parks did not tell them that the victim threatened him or reached for a gun.

> [T]he evidence here was in dispute as to whether [Parks] shot [the victim] with malice aforethought (since he was charged with murder), out of passion, or out of justification in self-defense. The resolution of this question depended heavily on the credibility of the witnesses, including [Parks]. Decisions regarding credibility are exclusively for the jury. A rational trier of fact was authorized to find the elements of voluntary manslaughter beyond a reasonable doubt.

(Citations and punctuation omitted.) *Stanley v. State*, 267 Ga. App. 656, 658 (601 SE2d 141) (2004).

2. Parks complains that the trial court erred in denying his motion for a mistrial after a police witness commented impermissibly on his right to remain silent. During a *Jackson-Denno* hearing, this witness was asked whether Parks gave a statement at the time of his arrest after being read his rights. He responded, "At the cabin, no, sir," explaining that he interviewed him on the following day. At trial, when asked, "Did he make any statements to you that night?" the witness responded, "No, sir." At that point, Parks's attorney asked for the jury to be sent out and moved for a mistrial. The State responded that the witness was merely establishing a "chronology of events for the jury," and that Parks did not assert his right to remain silent but simply did not give a statement until the following day.

After some colloquy, the trial court decided not to grant a mistrial, but cautioned the prosecutor that he was "awful close" and instructed the jury to disregard any testimony that a statement was not made at that time. Parks renewed his motion after the jury instruction, and it was denied. The witness went on to testify to Parks's waiver of his *Miranda* rights and his giving of a statement on the following day.

Assuming without deciding that this statement constituted a comment on Parks's silence,

[t]he comment of the witness was not directed to any particular statement or defense offered by the appellant. Furthermore, the comment on remaining silent was made during a narrative on the part of the authorities of a course of events. The remark apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant. To reverse a conviction, the evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury. No such situation exists here.

(Citations and punctuation omitted.) *Burton v. State*, 191 Ga. App. 822, 823 (4) (383 SE2d 187) (1989). See also *Taylor v. State*, 272 Ga. 559, 561-562 (2) (d) (532 SE2d 395) (2000) (ineffectiveness claim). Moreover, the trial court promptly gave curative instructions to the jury. "An improper comment on the defendant's silence does not necessarily require a reversal. The grant or denial of a mistrial is within the trial court's sound discretion, and we will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial." (Citation, punctuation and footnote omitted.) *Knolton v. State*, 268 Ga. App. 78, 79-80 (601 SE2d 467) (2004).

3. Parks contends the trial court also erred in denying his motion for a mistrial after the State elicited improper testimony from a police investigator regarding the creation of a photographic lineup. During questioning, the prosecutor asked, "How are the lineups generated?" The investigator responded, "When somebody — when somebody is taken to jail they have a photograph taken, every time they go to jail. So if you've been arrested forty times in Richmond County —." At this point, the trial court sua sponte excused the jury and Parks then moved for a mistrial. The prosecutor stated that he did not expect that response from the investigator, but that he was trying to elicit testimony that the pictures were generated by computer in the investigator's office to create a lineup of individuals of similar appearance that did not suggest one individual over another.

The trial court cautioned the prosecutors and the witness, then instructed the jurors that the investigator's testimony was "highly inappropriate" and that they were to "totally disregard" it and not infer from it that Parks had ever been arrested before. Parks's renewed motion for mistrial was denied.

The testimony in question was a general description of computer-generated lineups, and the witness's interrupted reference to a hypothetical person arrested multiple times in Richmond County did

not specifically identify Parks. "Such fleeting and incomplete references to a possible criminal history are harmless error that is curable by instruction. [Cits.]" *Gordian v. State*, 261 Ga. App. 75, 77 (2) (581 SE2d 616) (2003). "Reference to an arrest, made in the presence of the jury without other detail, is harmless error where proper instructions are given to disregard the reference to the past arrest and it is not error to overrule a motion for mistrial based thereon. [Cits.]" *Dunn v. State*, 251 Ga. 731, 734 (4) (309 SE2d 370) (1983). The trial court gave immediate and strong curative instructions to the jury and did not abuse its discretion in refusing to grant a mistrial. See id.

4. Parks next contends the trial court erred in failing to give sua sponte a jury charge on the issue of retreat, because his sole defense was self-defense and evidence was presented on the issue of retreat.

While "[t]he failure to give an unrequested charge is not error, it is well settled in this State that the failure to give a charge on a defendant's sole defense in a criminal case, even without a request, constitutes reversible error if there is some evidence to support the charge. [Cits.]" *Parker v. State*, 230 Ga. App. 578, 579 (2) (497 SE2d 62) (1998). Here, however, the evidence presented by Parks in support of his claim to self-defense did not present any issue of a duty to retreat. Either (as witnesses testified) Parks shot the victim while he was unresisting and holding his empty hands out, or (as Parks testified) the victim was "all over him" and "hurting him" and he fired at random "to get him off me." In neither case was an opportunity or duty to retreat indicated by the evidence, and a charge on this point therefore was not required.

Moreover, the jury heard the evidence of Parks's claim of self-defense, including his own account of the incident, and the trial court charged in detail on issues pertaining to Parks's claim of self-defense, including the substance of the pattern jury charges on justification and the use of force in defense of self or others, the definition of a forcible felony, and the doctrine of reasonable beliefs. Council of Superior Court Judges, Suggested Pattern Jury Instructions, 3d ed. 2003, §§ 3.02.10–3.02.12. Parks's defense therefore was fairly presented to the jury. *Edmonds v. State*, 275 Ga. 450, 454 (4) (569 SE2d 530) (2002).

> Where error is assigned upon a correct principle of law given in charge (as was the case here), and the exception to it is that it does not go further and elaborate in more detail additional principles applicable to the evidence, such is not reversible error in the absence of a written request to charge more specifically. Appellant made no written request to the court to charge more specifically. Hence, there was no error.

(Citations omitted.) *Overstreet v. State*, 182 Ga. App. 809, 812-813 (6) (357 SE2d 103) (1987) (full concurrence in Division 6).

5. Parks complains that the trial court erred in instructing the jurors that they were "the judges of both law and fact in a criminal case." The court stated that the jury was bound by the law as given in the charge of the court, "except you're the judges of it in applying it to the facts as you may find them to be." But our Supreme Court has held that the use of this language, which appears in the Georgia Constitution, is not error. *Hampton v. State*, 272 Ga. 284, 287 (7) (527 SE2d 872) (2000); see Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a).

6. Finally, Parks contends that his trial counsel was ineffective in failing to object to a portion of the State's closing argument that Parks characterizes as an impermissible "golden rule" reference. We first question whether the prosecutor's language fell within the definition of a "golden rule" argument. The State did not ask the jury to place themselves in the victim's shoes, but rather stated that the jurors would not do justice for the victim and his family if they refused to convict based upon side issues such as the presence of drugs or a witness's confusion regarding the color of the pistol.

In addition, at the hearing on the motion for new trial, Parks's appellate counsel did not call trial counsel as a witness and so did not examine him on his conduct of the trial. "Without such testimony, in the absence of other evidence that trial counsel's performance was deficient, the trial court is to presume that trial counsel's actions are part of trial strategy. In the absence of trial counsel's testimony, it is extremely difficult to overcome this presumption." (Citations and punctuation omitted.) *Temple v. State*, 253 Ga. App. 606, 609 (2) (a) (561 SE2d 132) (2002). Particularly since the State's comments arguably did not violate the "golden rule" prohibition, we cannot say that Parks has overcome the presumption that counsel's actions were strategic. Nor has he shown that counsel's failure to object to the State's argument had any negative effect on the outcome of the trial, since he was charged with murder but convicted only of voluntary manslaughter. He has thus failed to meet his burden as to either prong of the *Strickland* test, and the trial court's denial of his motion for new trial must be affirmed.

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 7, 2006 —
RECONSIDERATION DENIED SEPTEMBER 27, 2006.

Jimmy V. Parks, *pro se.*

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.